918 F.2d 95
 UNITED STATES of America, Plaintiff-Appellant,
v.
Angelo T. COMMITO; Carl A. Mattison; Monica E. Oss,
Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellant,
v.
Angelo T. COMMITO, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellant,
v.
Angelo T. COMMITO; Elliott F. Kusel; Marc L. Kusel;
Cheryl E. Fyten, Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellant,
v.
Angelo T. COMMITO; Elliott F. Kusel; Marc L. Kusel,
Defendants-Appellees.
 Nos. 89-10509, 89-10511, 89-10510, 89-10512 and 89-10513.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 5, 1990.
Decided Nov. 1, 1990.
 
 Rory K. Little, Asst. U.S. Atty., Chief Appellate Section, and Geoffrey A. Anderson, Asst. U.S. Atty., Chief, Organized Crime Strike Force, San Francisco, Cal., for plaintiff-appellant.
 Harry L. Hellerstein, Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellee Commito.
 Brian H. Getz, San Francisco, Cal., for defendant-appellee Cheryl E. Fyten.
 Randy Sue Pollock, San Francisco, Cal., for defendant-appellee Mark L. Kusel.
 Frank O. Bell, San Francisco, Cal., for defendant-appellee Elliott F. Kusel.
 Frank R. Ubhaus, Ubhaus & Collins, San Jose, Cal., for defendant-appellee Mattison.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN, Chief Circuit Judge, BROWNING and RYMER, Circuit Judges.
 PER CURIAM:
 
 
 1
 The United States appeals the suppression of evidence obtained by means of a wiretap authorized pursuant to 18 U.S.C. Secs. 2510 et seq. The Government argues that the affidavit accompanying its application contained facts sufficient to demonstrate necessity for the wiretap as required by Secs. 2518(1)(c), (3)(c). We agree and reverse.
 
 
 2
 * The affidavit in question detailed defendant Angelo Commito's business connections to the hierarchy of an organized crime group referred to as "La Cosa Nostra" or "LCN", the history of his involvement in a number of questionable business arrangements with various labor figures, and descriptions given by two confidential informants concerning Commito's earlier LCN connections and labor racketeering schemes. The affidavit also recounted in detail the events and results of the FBI's ten-month undercover investigation of Commito's operations begun in December 1985. Specifically, it explained how, despite having won confidence sufficient to receive an illegal kickback offer from Commito in consideration for his business, the undercover agent had failed to learn the precise means by which Commito and one of his associates concealed such illegal payments, the names of Commito's other associates, and the nature of other similar deals Commito professed to control. The affidavit explained how pen register coverage and telephone toll records obtained during the ten-month undercover investigation indicated repeated telephone contacts made among Commito and other suspects. These records indicated only that calls were made, not what was communicated.
 
 
 3
 Finally, the affidavit addressed why normal investigative techniques, such as physical surveillance, undercover informants, records subpoenas, search warrants, and grand jury subpoenas were not reasonably likely to succeed in this case. With regard to physical surveillance, the affidavit first noted its limited helpfulness and then stated that Commito and his associates had demonstrated "sensitivity to surveillance" by, among other methods, driving in "erratic" ways in order to detect surveillance. It was also noted that the residences of Commito and a fellow suspect were situated so as to make prolonged surveillance difficult, the one home being located in isolation behind a tall fence and the other, in a residential community where unknown people or cars would be conspicuous. The affidavit justified the nonuse of undercover informants by noting their limited helpfulness in general and then stating that the suspects were so secretive about their numerous business dealings in dealing with the undercover agent that their revealing the needed information to others was unlikely. Telephone call-record analysis, the affidavit stated, would be unhelpful because it would not establish who made the calls or for what purpose. In ending, the affidavit explained why the use of overt investigative techniques would be unproductive in this case. Records subpoenas, it was stated, would be useless in finding kickback checks that had been disguised, coded, and laundered, as Commito promised they would be to the undercover agent; search warrants would produce neither the full scope of Commito's schemes nor the identity of his many associates; and LCN members, sworn to secrecy on pain of death, would be unhelpful before a grand jury. Moreover, overt methods "would probably only alert the suspects to the investigation."
 
 II
 
 4
 We hold that the government's affidavit provides a sufficiently detailed description of the various procedures that had been used unsuccessfully to investigate the defendant and his associates. The affidavit's explanations for not using physical surveillance, undercover informants, or the overt investigative techniques of records and grand jury subpoenas are also satisfactory.
 
 
 5
 The sole unsatisfactory statements appear to be those concerning the nonuse of search warrants and telephone records. "Bald conclusory statements without factual support are not enough." United States v. Martinez, 588 F.2d 1227, 1231 (9th Cir.1978). " '[T]he affidavit [read in its entirety] must show with specificity why in this particular investigation ordinary means of investigation will fail.' " United States v. Ippolito, 774 F.2d 1482, 1486 (9th Cir.1985), quoting United States v. Robinson, 698 F.2d 448, 453 (D.C.Cir.1983) (per curiam) (emphasis in original); see also Martinez, 588 F.2d at 1231. In light of the many assertions that are supported by specific probative facts, the few conclusory statements explaining the nonuse of search warrants and telephone records do not render the affidavit--read in its entirety in a practical and commonsense fashion--invalid under Sec. 2518(1)(c).
 
 III
 
 6
 In reviewing the issuing court's necessity determination under 18 U.S.C. Sec. 2518(3)(c), this court applies the deferential "abuse of discretion" standard, see United States v. Carneiro, 861 F.2d 1171, 1176 (9th Cir.1988); see also United States v. Martin, 599 F.2d 880, 886-87 (9th Cir.1979), making certain that the lower court interpreted the restriction " 'in a practical and commonsense fashion.' " United States v. Brown, 761 F.2d 1272, 1275 (9th Cir.1985), quoting United States v. Bailey, 607 F.2d 237, 241 (9th Cir.1979).
 
 
 7
 Section 2518(3)(c) expressly requires the district court to determine whether the wiretap application contains facts sufficient to support a finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. Sec. 2518(3)(c). This "necessity" requirement exists in order to limit the use of wiretaps, which are highly intrusive. United States v. Smith, 893 F.2d 1573, 1582 (9th Cir.1990).
 
 
 8
 Although the traditional investigative measures used by the government provided evidence sufficient to confirm the FBI's suspicions that Commito and certain of his associates were engaged in racketeering schemes, they failed to produce evidence sufficient to bring federal indictments against these men. After nearly a year of relying on these measures, the FBI did not know significant features of the enterprise, including the precise means by which Commito and his men concealed the illegal kickbacks, the identities of Commito's many associates, and the nature of other schemes similar to the one planned with the undercover agent.
 
 
 9
 The affidavit indicates that Commito was unlikely to reveal to the undercover agent the identities of his numerous crime associates and their precise racketeering methods. Commito invited the undercover agent to several meetings regarding other deals, solicited the agent's business, encouraged him to become further involved in his enterprise, and put him in touch with other business associates. Nevertheless, at the end of ten months, the undercover agent had only limited specific knowledge about Commito's criminal network. From this information, the issuing judge could reasonably have concluded that Commito only appeared to take the agent into his confidence, that his demeanor was but a ploy to win a contract for the business he was "promised." The government was not obligated to continue this relatively unproductive undercover state of affairs for another ten months in the hope of gaining Commito's complete trust. See Smith, 893 F.2d at 1582 (wiretap "need not be the last resort" in criminal investigation); see also United States v. Spagnuolo, 549 F.2d 705, 710 n. 1 (9th Cir.1977) (citations omitted). The issuing court cannot be said to have abused its discretion by finding that the government had reached the point in its investigation where further use of these same methods would have been unproductive.
 
 
 10
 Nor was it an abuse of discretion for the issuing court to hold that those measures which the government failed to use could not reasonably have been expected to produce evidence sufficient to prosecute Commito and his associates successfully. Most of the unused methods, such as search warrants, undercover informants and grand jury subpoenas, are overt and testimonial; and it is far from certain that they would have been even the least bit productive in this racketeering investigation of sophisticated criminals who have longstanding ties to the mafia and are engaged in interstate business transactions. It is also worth noting that the existence of a potentially productive unused method is not fatal in this necessity determination, because "[a]n investigative agency is not required to exhaust all possible investigative techniques before resorting to a wiretap." Martin, 599 F.2d at 887.
 
 
 11
 The judge who issued the order did not abuse his discretion. The judge who suppressed the evidence after a detailed critique of the affidavit by defense counsel held the government to a standard that would allow virtually no wiretaps in the investigation of alleged organized crime.
 
 
 12
 The suppression order is VACATED and the cause is REMANDED for further proceedings.