931 F.2d 887
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francesco DELORENZO, a/k/a Frank, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Felice SESTITO, a/k/a Phillip, Defendant-Appellant.
 No. 90-5800.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 5, 1991.
Decided May 3, 1991.
 
 1
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Joseph C. Howard, District Judge. (CR-89-269-JH)
 
 
 2
 David Beckham Irwin, Irwin, Kerr, Green, McDonald and Dexter, Harold Irwin Glaser, Baltimore, Md., for appellants.
 
 
 3
 Frank J. Marine, United States Department of Justice, Washington, D.C. (argued), for appellee; Breckinridge L. Willcox, United States Attorney, Gregory Welsh, Assistant United States Attorney, Deborah Rhodes, Assistant United States Attorney, Baltimore, Md., on brief.
 
 
 4
 D.Md.
 
 
 5
 AFFIRMED.
 
 
 6
 Before DONALD RUSSELL and WILKINSON, Circuit Judges, and REBECCA BEACH SMITH, United States District Judge for the Eastern District of Virginia, Sitting by Designation.
 
 REBECCA BEACH SMITH, District Judge:
 
 7
 Francesco DeLorenzo ("appellant DeLorenzo") and Felice Sestito ("appellant Sestito") appeal various aspects of their cocainerelated convictions. On February 15, 1990, a jury returned a verdict, finding appellants DeLorenzo and Sestito guilty of conspiring to distribute cocaine in violation of 21 U.S.C. Sec. 846. The jury also convicted appellant DeLorenzo on twelve counts of distributing cocaine and convicted appellant Sestito on four counts of distributing cocaine, all in violation of 21 U.S.C. Sec. 841(a)(1), and 18 U.S.C. Sec. 2. Appellant DeLorenzo received a sentence of sixty-nine months imprisonment, to be followed by four years of supervised release, and was fined $75,000. Appellant Sestito received a sentence of sixty-three months imprisonment, to be followed by four years of supervised release, and was fined $15,000. Finding no reversible error, we affirm.
 
 I.
 
 8
 The indictment charged that from in or about June 1988 until the date of the indictment, July 19, 1989, appellants, in the District of Maryland and elsewhere, conspired to distribute, and did distribute on numerous occasions, cocaine. The information provided by and through one Vincent Scotto ("Scotto") was crucial to the government's case against appellants.
 
 
 9
 Appellants owned separate business establishments in Aberdeen, Maryland. Appellant DeLorenzo owned Frank's Pizza and Subs, and appellant Sestito owned a gas station, Aberdeen Texaco. These establishments were located diagonally across the street from each other. Scotto owned Vinnie's Pizzeria in Claymont, Delaware, which is about fifty miles from Aberdeen. Scotto had known appellant DeLorenzo since 1970, and had known appellant Sestito since 1974.
 
 
 10
 Following his arrest for involvement in the illegal distribution of heroin and cocaine from approximately 1983 to early 1988, Scotto, on April 27, 1988, entered into a plea agreement with the United States. Scotto agreed to cooperate with federal authorities in ongoing drug trafficking investigations and to plead guilty to a two-count criminal information charging him with conspiring to distribute heroin and with attempting to defraud the Mellon Bank of Delaware. In exchange for his cooperation and plea of guilty, the government agreed to inform the sentencing court of Scotto's assistance before imposition of sentence.
 
 
 11
 Pursuant to the plea agreement, Scotto agreed to record his conversations with appellants and others, and he agreed to testify against appellants. Accordingly, between mid-June 1988 and late June 1989, the government obtained numerous recorded conversations between appellants and Scotto during which cocaine transactions were discussed or consummated.[1]
 
 
 12
 As Scotto testified, on twelve occasions from October 13, 1988, to April 6, 1989, he purchased cocaine from appellants under the control and direction of the government.[2] On eleven of those twelve occasions Scotto recorded, via a "body wire," the delivery of cocaine from appellant DeLorenzo. With two exceptions, Scotto's controlled purchases followed the same basic pattern, with the actual delivery of cocaine taking place at appellant DeLorenzo's pizzeria.[3]
 
 
 13
 In addition to Scotto's controlled purchases, the government utilized various other means to obtain evidence against appellants. For example, the government procured long-distance toll records, installed Dialed Number Recorders (pen registers), and from February 15, 1989, to April 15, 1989, electronically monitored the calls placed and received on the telephones located at appellants' business establishments.
 
 
 14
 Appellants were taken into custody on July 18, 1989. On July 19, 1989, the Grand Jury for the District of Maryland issued a thirteen-count indictment charging appellants with one count of conspiracy, in violation of 21 U.S.C. Sec. 846, and twelve counts of distribution of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1), and 18 U.S.C. Sec. 2.
 
 
 15
 Appellants filed several pretrial motions. By order of January 17, 1990, the trial court denied these motions and, in so doing, denied appellants' separately filed motions for a severance and denied appellants' joint motion to suppress the evidence secured by electronic surveillance.
 
 
 16
 Appellants' trial began on January 31, 1990. On February 15, 1990, the jury rendered its verdict, finding appellant DeLorenzo guilty on all thirteen counts, and finding appellant Sestito guilty on five counts, including the one count of conspiring to distribute cocaine. Following their convictions, appellants separately moved for new trials, but these motions were denied. Subsequently, the trial court sentenced appellant Sestito on May 3, 1990, and sentenced appellant DeLorenzo on May 14, 1990.
 
 II.
 
 17
 On appeal, appellants assert error in regard to the following seven points: (1) the limitation on the scope of their crossexamination of Scotto; (2) the prosecutor's comments on appellants' failure to testify; (3) the prosecutor's cross-examination of Vincenzo DeLorenzo; (4) the prosecutor's mischaracterization of the fingerprint evidence; (5) the trial court's comments made after the testimony of Albert DeProspero; (6) the trial court's denial of appellants' severance motions; and (7) the trial court's refusal to suppress the fruits of the government's electronic surveillance. We address each point in the order listed.
 
 A.
 
 18
 Appellants claim that they were deprived of their Sixth Amendment right of confrontation and their Fifth Amendment right to a fair trial by their inability to cross-examine Scotto on the identities of other persons who supplied Scotto cocaine during the period of the alleged conspiracy. During discovery, the government, citing its need to withhold the identities of subjects of pending investigations, redacted from the materials produced to appellants the names of four persons who sold narcotics to Scotto and the times of their recorded conversations with Scotto. Two of the four redacted identities were those of heroin suppliers, and the other two were those of cocaine suppliers. In response to appellants' asserted need for the redacted information, the government subsequently disclosed to appellants the identity of one of the two previously unidentified cocaine suppliers, Thomas Barker. Thus, the name of only one cocaine supplier was withheld from appellants.
 
 
 19
 On cross-examination of Scotto at trial, the trial court, while preserving the identity of the one undisclosed cocaine supplier, afforded appellants substantial leeway in their crossexamination of Scotto. Specifically, Scotto testified on crossexamination that during the period of the alleged conspiracy, four persons sold him drugs; two of the four sold him heroin; and Thomas Barker was one of the two cocaine suppliers. Furthermore, Scotto provided the details of his purchases of cocaine from Barker and the other unnamed cocaine supplier, and also named five other persons who supplied him cocaine during the five years preceding the alleged conspiracy.
 
 
 20
 The right of confrontation and cross-examination, though precious, is not without limitation. United States v. Cole, 622 F.2d 98, 100 (4th Cir.), cert. denied, 449 U.S. 956 (1980). Absent an abuse of discretion clearly prejudicial to the defendant, the trial court may limit the extent of cross-examination. United States v. Gravely, 840 F.2d 1156, 1163 (4th Cir.1988) (citing with approval United States v. Atwell, 766 F.2d 416, 419-20 (10th Cir.), cert. denied, 474 U.S. 921 (1985)). The trial court's limitation on Scotto's cross-examination clearly did not prejudice appellants. Appellants, who were permitted to cross-examine Scotto extensively about the sources and details of his drug transactions, in no way were hindered in presenting their defense that Scotto obtained cocaine from sources other than appellants. The only information that appellants were unable to extract from Scotto was the identity of one cocaine source. Frankly, we find the name of this one cocaine source to be irrelevant to appellants receiving a fair trial, and, furthermore, we find that the district court accomplished the dual purpose of permitting effective cross-examination while not frustrating an ongoing investigation.
 
 B.
 
 21
 Appellants contend that the prosecutor's rebuttal argument contained an improper comment on appellants' failure to testify. During rebuttal, the prosecutor remarked:
 
 
 22
 Now, the second thing is counsel have raised the issue as to whether the voices that are identified in here as being the voices of DeLorenzo and Sestito are in fact their voices. Again, the only evidence that you have is that it is their voices. Not a single witness has taken that witness stand and said I listened to Memorex and Frank DeLorenzo is not on there, Phil Sestito is not on there, even though the government's book says it is. Even though counsel questions whose voices are on the tapes, the only evidence you have, and it's evidence that you can believe beyond a reasonable doubt, you can believe it beyond any doubt, is it is the voices of the defendants when their initials are shown in the transcripts.
 
 
 23
 Trial Transcript at 1169 (hereinafter referred to as "Tr.").
 
 
 24
 The test is well established for determining whether a prosecutor's remarks constitute an improper comment on a defendant's failure to testify: "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" Morrison v. United States, 6 F.2d 809, 811 (8th Cir.1925), quoted in United States v. Anderson, 481 F.2d 685, 701 (4th Cir.1973), aff'd, 417 U.S. 211 (1974), and United States ex rel. Leak v. Follette, 418 F.2d 1266, 1269 (2d Cir.1969), cert. denied, 397 U.S. 1050 (1970). Applying this test, we do not believe that the prosecutor's remarks can be fairly read as a comment on appellants' failure to testify. The prosecutor seems to have been commenting on those who took the stand, not on those who could have but elected not to testify. We find nothing improper about these remarks. Furthermore, to the extent that the jury may have understood the prosecutor to be commenting on appellants' failure to testify, the trial court cured that impression by specifically instructing the jury that it could draw no adverse inference from appellants' failure to testify. See United States v. Lorick, 753 F.2d 1295, 1298 (4th Cir.), cert. denied, 471 U.S. 1107 (1985); United States v. Wooten, 688 F.2d 941, 947 (4th Cir.1982); United States v. Whitehead, 618 F.2d 523, 527-28 (4th Cir.1980).
 
 C.
 
 25
 Appellant DeLorenzo asserts that the prosecutor's crossexamination of Vincenzo DeLorenzo, appellant DeLorenzo's brother, deprived him of a fair trial by suggesting that appellant DeLorenzo had ties to organized crime. On cross-examination, the prosecutor asked Vincenzo DeLorenzo if he ever had met Tony Anastasia. Tony Anastasia, before his death, reputedly was associated with organized crime. Appellant DeLorenzo's counsel initially objected to the question, but he withdrew the objection after a bench conference. The prosecutor then asked basically the same question, probing Vincenzo DeLorenzo's familiarity with Tony Anastasia. Vincenzo DeLorenzo responded that although he knew of Tony Anastasia, he never had met him.
 
 
 26
 Contrary to appellant DeLorenzo's assertion, we find that he was not deprived of a fair trial by the prosecutor's crossexamination of Vincenzo DeLorenzo. First, by withdrawing his objection, appellant DeLorenzo failed to preserve properly this issue for appeal. Consequently, appellant DeLorenzo now asserts, as he must, that the admission of such testimony in the case constituted "plain error" under Rule 52(b) of the Federal Rules of Criminal Procedure.[4] The "plain error" standard of Rule 52(b) of the Federal Rules of Criminal Procedure is a sparingly used exception to the contemporaneous objection rule that permits a reviewing court, in the absence of a timely objection, to correct particularly egregious errors that undermine the fundamental fairness of the trial and contribute to a miscarriage of justice. United States v. Young, 470 U.S. 1, 15, 16 (1985).
 
 
 27
 Applying this standard of review, nothing in the government's cross-examination of Vincenzo DeLorenzo constituted plain error. Contrary to appellant DeLorenzo's assertions, we fail to see how the prosecutor's question or Vincenzo DeLorenzo's answer prejudiced either appellant DeLorenzo or appellant Sestito. Vincenzo DeLorenzo denied knowing Tony Anastasia. Moreover, it was counsel for appellant DeLorenzo, when he cross-examined Scotto during the government's case-in-chief, who initially placed at issue appellant DeLorenzo's potential link to organized crime, in general, and Tony Anastasia, in particular.[5]
 
 D.
 
 28
 Appellants argue they were denied a fair trial by the prosecutor's mischaracterization during his rebuttal argument of the fingerprint evidence introduced at trial. During its investigation of appellants, the government submitted to the Federal Bureau of Investigation's Crime Laboratory for fingerprint analysis ten paper bags, one paper cup, four pieces of paper, and one envelope. At trial, Special Agent Tyler, Federal Bureau of Investigation, was called as a defense witness by appellant Sestito. Tyler testified that of the latent fingerprints recovered from the items submitted for fingerprint analysis, none were identified as those belonging to appellant Sestito. In his rebuttal, however, the prosecutor stated:
 
 
 29
 There was some talk about the fingerprint evidence. You will recall Special Agent Tyler's testimony about the fingerprint evidence was that she sent the materials to have them fingerprinted, and at the time that Sestito got arrested when she could get a full set of prints from him, there was nothing to compare it to. No readable prints have been recovered from the items, so it's a total wash. The fingerprint evidence does not help or hurt anyone in this case.
 
 
 30
 Tr. at 1175. The government concedes on appeal that the prosecutor mischaracterized Tyler's testimony. See Brief for the United States at 27. However, the government asserts, and we agree, that the prosecutor's mischaracterization was not so egregious as to warrant reversal.
 
 
 31
 At trial, appellants' counsel made no objection to the prosecutor's above-quoted rebuttal comments. Thus, the "plain error" standard of review governs this issue. Applying this standard, see supra at 11, the prosecutor's mischaracterization did not rise to the level of plain error. Very simply, the evidence in this case was overwhelming. Nothing the prosecutor said or did contributed to a miscarriage of justice. Furthermore, we note that the prosecutor's closing remarks were not evidence in the case. Any danger of the prosecutor's mischaracterization improperly prejudicing appellants was minimized by the trial court's instruction to the jury that the prosecutor's comments were not evidence in the case.
 
 E.
 
 32
 Appellants contend that the trial court's comments after the testimony of appellant Sestito's final witness deprived them of a fair trial. On the morning of February 13, 1990, the last day of testimony in the case, the trial court was forced to take an early recess, because appellant Sestito's final witness, Albert A. DeProspero, was absent from court. Consequently, the court was unable to reconvene until later that afternoon to hear the testimony of DeProspero. After DeProspero testified, the trial court, in the presence of the jury, stated the following to defense counsel: "All of you understand that you have held this jury up. They could have been all the way home. We've been waiting for this one witness. But that's what it's all about." Tr. at 1032. At trial, defense counsel made no objection to these remarks. On appeal, appellants argue that, notwithstanding their failure to object at trial, they are entitled to a new trial because the trial court's comments evidenced its partiality and unduly influenced the jury. We disagree with appellants' argument on this point for three reasons.
 
 
 33
 First, if the trial court's remarks were as inflammatory and prejudicial as appellants now claim, they should have objected at trial. At oral argument, appellants attempted to justify their failure to contemporaneously object on the ground that an objection would have served only to exacerbate the prejudice. This argument is unpersuasive. An open court objection is not the only way an objection can be made. Nothing prevented appellants' counsel from either asking the trial court for permission to approach the bench so they could object out of the jury's earshot, or, alternatively, from asking the trial court to excuse the jurors from the courtroom so they could object out of the jury's presence.
 
 
 34
 Second, since appellants failed to object at trial to the trial court's comments, we now review appellants' claim of judicial misconduct under the "plain error" doctrine, namely whether the trial court's comments affected substantial rights of appellants. See Fed.R.Crim.P. 52(b); supra at 11. After a thorough examination of the record, we conclude that the trial court's comments did not constitute plain error and did not affect the substantial rights of appellants. Rather, given the circumstances which prompted the trial court's remarks, the trial court's comments can at best be viewed as reasonable, and at worst be viewed as improvident.
 
 
 35
 Third, even if error, the trial court's jury instructions cured any conceivable prejudice. See, e.g., United States v. Billups, 692 F.2d 320, 327 (4th Cir.1982), cert. denied, 464 U.S. 820 (1983). The trial court instructed the jury, "[Y]ou are not to be influenced by any of my comments, questions or demeanor; indeed, nothing I have said[,] asked[,] or done is intended to convey to you what I think your decisions ought to be." Tr. at 1188.
 
 F.
 
 36
 Appellants argue they were deprived of a fair trial by the trial court's denial of their separately filed severance motions. Specifically, appellants maintain that they suffered severe prejudice as a result of their joinder for trial, because their defenses were conflicting and antagonistic.
 
 
 37
 Rule 14 of the Federal Rules of Criminal Procedure governs relief from prejudicial joinder. Pursuant to Rule 14, "[i]f it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants ... for trial together, the court may ... grant a severance of defendants or provide whatever other relief justice requires." The issue of severance lies within the sound discretion of the trial court, however, and its determination "will not be disturbed 'unless the denial of a severance deprives the defendants of a fair trial and results in a miscarriage of justice.' " United States v. Parodi, 703 F.2d 768, 780 (4th Cir.1983) (quoting United States v. Becker, 585 F.2d 703, 706 (4th Cir.1978), cert. denied, 439 U.S. 1080 (1979)).
 
 
 38
 Applying these principles to the facts of this case, the trial court's refusal of severance was not an abuse of discretion, as appellants were not prejudiced or denied a fair trial by their joinder.[6] Moreover, the trial court's finding that joinder was appropriate in this case is consistent with this court's prior observation that "[o]rdinarily, persons, properly joined in an indictment, are to be tried together and this is particularly so if a conspiracy is charged." Parodi, 703 F.2d at 779.
 
 G.
 
 39
 Appellants' final assignment of error is the trial court's refusal to suppress the contents of intercepted wire communications. Pursuant to court order, the government, from February 15, 1989, to April 15, 1989, conducted electronic surveillance of the telephone lines connected to appellant DeLorenzo's business, Frank's Pizza and Subs, and appellant Sestito's business, Aberdeen Texaco.[7] Prior to commencement of trial, appellants unsuccessfully moved to suppress the fruits of the government's electronic surveillance on the ground that the government failed to establish sufficient "necessity" to warrant the issuance of an electric surveillance order. Appellants essentially have renewed on appeal the argument contained in their pretrial motion.
 
 
 40
 Pursuant to 18 U.S.C. Sec. 2518(1)(c), an application for an electronic surveillance order must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Title 18 U.S.C. Sec. 2518(3)(c), in turn, provides that before a court issues an electronic surveillance order it must determine on the basis of the facts submitted by the applicant that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."
 
 
 41
 The "necessity" requirement of 18 U.S.C. Sec. 2518 is designed to ensure that "wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Kahn, 415 U.S. 143, 153 n. 12 (1974). However, 18 U.S.C. Sec. 2518 does not require the government to exhaust every conceivable technique before applying for a wiretap. See United States v. Clerkley, 556 F.2d 709, 715 (4th Cir.1977), cert. denied, 436 U.S. 930 (1978). The showing of need under 18 U.S.C. Sec. 2518 must be tested in a practical fashion. Id. at 714. Furthermore, an issuing court has considerable discretion to authorize an electronic surveillance. While a court of appeals reviews de novo whether the applicant submitted a full and complete statement of facts in compliance with 18 U.S.C. Sec. 2518(1)(c), the issuing court's decision under 18 U.S.C. Sec. 2518(3)(c), that the electronic surveillance was necessary, is reviewed for an abuse of discretion. United States v. Brone, 792 F.2d 1504, 1506 (9th Cir.1986).
 
 
 42
 Applying these principles, we find that the government's application for an electronic surveillance order complies with 18 U.S.C. Sec. 2518(1)(c), and the issuing court did not abuse its discretion. The government supported its application for an electronic surveillance order with a thirty-four page affidavit of Special Agent Lano, Federal Bureau of Investigation. That affidavit showed with sufficient specificity that although the government had some success in gathering evidence by other investigative techniques, interception of wire communications was needed to fully develop a prosecutable case. Accord United States v. Commito, 918 F.2d 95 (9th Cir.1990). Therefore, it was not an abuse of discretion to issue the electronic surveillance order and, consequently, the trial court committed no error in admitting into evidence the fruits of that electronic surveillance.
 
 III.
 
 43
 For the foregoing reasons, we find no reversible error. Appellants' convictions are
 
 
 44
 AFFIRMED.
 
 
 45
 Q: Isn't it fair to say it became obvious to you on this day they're [FBI Agents] asking you about any potential connection of Frank DeLorenzo with organized crime, with the Mafia; that's what it was all about, right?
 
 
 46
 A: Any question they ask, I cooperate, true.
 
 
 47
 Q: You know that he knows a lot of Italians in New York and he helps you with money, but you don't know he's in the Mafia or anything like that, right?
 
 
 48
 A: I never know.
 
 
 49
 Q: Did you tell them that his [appellant DeLorenzo's] wife, whose name is Gloria, is a niece of Tony Anastasia?
 
 
 50
 A: Yes.
 
 
 51
 Q: Tony Anastasia is the brother of Albert Anastasia, a big mobster that got killed in New York about 30 years ago, right?
 
 
 52
 A: Yes.
 
 
 53
 A: It was something told to me from him [appellant DeLorenzo].
 
 
 54
 Q: You're saying that Mr. DeLorenzo said that?
 
 
 55
 A: That's correct. He told me that he was related.
 
 
 56
 Q: But you specifically told the FBI that Gloria DeLorenzo is a niece of the Anastasia? That's what you told him?
 
 
 57
 A: That's what I hear.
 
 
 58
 Tr. at 552, 592, 593.
 
 
 
 [1]
 Counsel for appellant DeLorenzo argued at trial and on appeal that never in the recorded conversations did appellants specifically use the term "cocaine" to identify the subject of the proposed or consummated transactions. Instead, appellants discussed the purchase and sale of "flour," "bottles," "potatoes," "tomatoes," "mozzarella," and "pigs feet," among other items. However, the evidence at trial, specifically the testimony of Scotto, was that these terms referred to "cocaine."
 
 
 [2]
 On no occasion during the life of the alleged conspiracy did Scotto buy cocaine directly from appellant Sestito. However, appellant DeLorenzo told Scotto, and other evidence confirmed, that appellant Sestito was the supplier of the cocaine that appellant DeLorenzo in turn sold to Scotto
 
 
 [3]
 On October 21, 1988, and November 11, 1988, appellant DeLorenzo delivered cocaine to Scotto at Scotto's pizzeria
 
 
 [4]
 The government argues that appellant DeLorenzo "invited" the error, if any, by stating after the bench conference, "I'll withdraw the objection. I'm sorry. I would just like to know the answers before I object." Brief for the United States at 24 (Oct. 19, 1990) (quoting Tr. at 889). According to the government, these statements evinced a desire on the part of appellant DeLorenzo to have the witness answer the question and, as such, on appeal not even the "plain error" standard should apply. Id. Since we find no plain error, it is unnecessary to entertain the question of whether appellant DeLorenzo invited the alleged error
 
 
 [5]
 The following exchange took place between counsel for appellant DeLorenzo and Scotto:
 * * *
 * * *
 
 
 [6]
 At a threshold level, we disagree with appellants' assertion that they pursued antagonistic defenses at trial. The record shows appellants pursued a common defense that Scotto obtained the cocaine in question from a third-party source and not from either appellant DeLorenzo or appellant Sestito
 
 
 [7]
 The government obtained the initial wiretap order on February 15, 1989, and subsequently received an extension of that order on or about March 16, 1989