117 F.3d 1427
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald WILSON, Defendant-Appellant.
 No. 96-50579.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 2, 1997.
Decided July 7, 1997.
 
 Before: BROWNING, FLETCHER and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant was apprehended with 30 grams of crack after the government, which had tapped his brother's phone, heard him agree to deliver the drugs. In appealing his conviction, he argues the district court abused its discretion in approving the wiretap application.
 
 
 3
 Under 18 U.S.C. § 2518(3)(c), a wiretap application can be approved only if the government shows that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed." Here, the government had infiltrated the conspiracy in which appellant and his brother were involved, but would have had a difficult time locating the supplier of the drugs using "conventional" investigative methods. It is not fatal to the government's case that conventional means might have worked. See United States v. Commito, 918 F.2d 95, 98-99 (9th Cir.1990) ("[T]he existence of a potentially productive unused method [of investigation] is not fatal in this necessity determination.... "); United States v. Carneiro, 861 F.2d 1171, 1178 (9th Cir.1988) ("The fact that the DEA could have taken different or ... additional steps in its investigation does not demonstrate that the district court abused its discretion in upholding the wiretap order."); United States v. Bailey, 607 F.2d 237, 242 (9th Cir.1979) (necessity arises when normal investigative techniques have failed to make the case within a reasonable period of time); United States v. Baker, 589 F.2d 1008, 1013 (9th Cir.1979) ("[S]tatute does not mandate the indiscriminate pursuit to the bitter end of every non-electronic device....").
 
 
 4
 Appellant complains that the government had, or would soon have had, sufficient evidence against the key conspirators without the tap. But it was entitled to look for the supplier. See United States v. Echavarria-Olarte, 904 F.2d 1391, 1396 (9th Cir.1990) (as amended) (upholding wiretap to determine source of drugs, although conspiracy had already been infiltrated). Our decision does not, as appellant complains, suggest that there will be "necessity" for a wiretap in every drug case because there is always another person who can be caught; we think the government acted more reasonably than that in delineating the scope of its investigation. See United States v. Smith, 893 F.2d 1573, 1582 (9th Cir.1990) (necessity requirement should be construed "in a practical and common sense fashion.").
 
 
 5
 Appellant also appeals from the district court's refusal to examine, or to let him examine, the reports on which the wiretap application (including the affidavit of Agent Radke) was based. If appellant doubted the veracity of the affidavit, he could have asked for a Franks [v. Delaware, 438 U.S. 154 (1978) ] hearing. He cites no other statute, rule or caselaw under which he was entitled to view the reports: Investigative reports are excluded from discovery under Rule 16(a)(2) of the Federal Rules of Civil Procedure; and neither the Jencks Act, 18 U.S.C. § 3500, nor Brady v. Maryland, 373 U.S. 83, 87 (1963), applies.
 
 
 6
 AFFIRMED.
 
 
 7
 FLETCHER, Circuit Judge: Partial Concurrence and Partial Dissent
 
 
 8
 I concur in the majority's opinion insofar as it affirms the district court's refusal to examine, or permit Wilson to examine, the reports on which the wiretap application was based.
 
 
 9
 I respectfully dissent however from its refusal to reverse the denial of Wilson's motion to suppress evidence resulting from the wiretapping of his brother's phone. As the majority correctly notes, a wiretap application can be approved only if the government shows that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed." Though it is not fatal to the government's case that conventional means might have worked, see United States v. Commito, 918 F.2d 95, 98-99 (9th Cir.1990), this is a case in which conventional techniques had worked, and worked quite well, and in which the government possessed information that could be used well in further investigation using conventional techniques. The government alleged nothing that amounted to necessity for the wiretap and therefore the district court abused its discretion in denying Wilson's motion to suppress the evidence seized as a result of it.
 
 
 10
 The government offered the following information in its affidavit supporting the wiretap application: Three confidential informants had either purchased drugs from co-defendant Anthony Wilson or sold drugs for him; FBI agents watched Wilson deliver cocaine on several occasions and heard him agree to supply cocaine; two confidential informants observed drug sales by co-defendant Ruth Tekeste; on three occasions Agent Radke had instructed one of the informants to purchase cocaine from Wilson, placing the call to Wilson's pager himself; Agent Radke had information that Wilson sometimes acquired his drugs from Tekeste's brother, who had connections with Mexican drug traffickers; Wilson was known to use secret "stash" locations to hide his narcotics; one informant could identify four members of Wilson's organization and could describe Wilson's methods of distribution in detail; 46 calls had been placed to a number at an apartment two blocks from Wilson's residence where Ruth Tekeste's name appeared on the resident's list; the phone at this apartment had been used to return the page of the confidential informant shortly before a monitored drug transaction had occurred.
 
 
 11
 No showing was made that specific circumstances rendered normal investigative techniques ineffective or dangerous. See United States v. Abascal, 564 F.2d 821, 825-26 (9th Cir.1977). The government offered as reasons only that the gang they were investigating was close-knit; a search of the apartment used to store drugs would tip off the conspirators to the investigation; physical surveillance yields incomplete information; gang members are likely to be uncooperative witnesses; and trap and trace devices do not reveal the identity of callers, only their phone numbers.
 
 
 12
 That an investigation must end, that street gangs are close knit, that police would always like to know more about the scope of conspiracies, and that traditional methods of surveillance do not reveal all are generic problems of police investigation. In a society that protects civil liberties, we balance the danger to society against liberty. I do not find here the sort of specific circumstance that justifies a wiretap.
 
 
 13
 While it is certainly true, as the majority points out, that the police were entitled to look for the supplier of the drugs, United States v. Echavarria-Olarte, 904 F.2d 1391, 1396 (9th Cir.1990) (as amended), they easily could have done further traditional surveillance of co-defendant Gonzalez on the basis of information revealed by the pen register (monitoring outgoing telephone calls) and the trap and trace device (monitoring incoming calls) attached to Wilson's phone. That record reveals that between April 24, 1995 and July 18, 1995, more than 400 calls were placed between Wilson and Tekeste's residence and locations where Gonzalez resided. While this record was referred to in Agent Radke's affidavit as containing 2,426 calls, suspicious in its volume alone, it was disingenuous, to say the least, not to inform the district court of the high percentage of those calls placed to or received from phones where Gonzalez resided.
 
 
 14
 United States v. Smith, 893 F.2d 1573, 1582 (9th Cir.1990) counsels us to construe the necessity requirement in a "practical and common sense fashion." The police suspected that Wilson had an apartment where he stashed his drugs. They were aware of an apartment only two blocks from Wilson's home, where co-defendant Tekeste was listed as a resident, to which they stated that 46 phone calls had been placed, and from which Wilson had called immediately before a monitored drug transaction with an informant. They failed to seek a search warrant for this apartment before requesting permission to wiretap. The government knew that over 400 phone calls had been placed to phones traceable to co-defendant Gonzales, yet the affidavit makes no mention of any traditional surveillance efforts aimed at determining whether or not Gonzales was Anthony Wilson's source for the drugs. There was no showing made to the district court that practical and sensible steps had been taken and had failed.
 
 
 15
 In order to get permission to tap a private individual's phones "[t]he government must do more than merely characterize a case as a 'gambling conspiracy' or a 'drug conspiracy' or any other kind of case that is in general 'tough to crack.' " Abascal, 564 F.2d at 826. (quoting United States v. Kalustian, 529 F.2d 585, 589 (9th Cir.1975). The government has not done so here. The district court abused its discretion in granting permission for the wiretap. I dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3