UNITED STATES of America,
Plaintiff–Appellee,

v.

Delores HOMICK, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles DIETZ, Defendant–Appellant.

Nos. 91–10091, 91–10092.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 13, 1992.

Decided May 15, 1992.

Gregg Marlowe, Theodore J. Manos & Associates, and Cal Potter, Lovell, Bilbray & Potter, Las Vegas, Nev., for defendant-appellant.

Frank Marine, Asst. U.S. Atty., Washington, D.C., for plaintiff-appellee.

Before: REINHARDT, NOONAN and THOMPSON, Circuit Judges.

REINHARDT, Circuit Judge:

Delores Homick and Charles Dietz appeal their convictions on one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and one count of wire fraud, in violation of 18 U.S.C. § 1343. We affirm.

### BACKGROUND

On December 11, 1985, Bobby Jean Tipton, her housekeeper, and a delivery man were murdered during the course of a robbery at the Tipton residence in Las Vegas, Nevada. While investigating the robbery and murders, the Las Vegas police became suspicious of appellant Delores Homick's ex-husband, Steven Homick (Steve), and his two brothers, William and Robert. On January 16, 1986, the police sought and received authorization from a Nevada state court judge to place wiretaps on the three telephone numbers at the residence of Steve and Delores Homick and the one telephone number at William Homick's residence. The affidavit submitted in support of the wiretap application was based on information received from an FBI informant unfamiliar to the Las Vegas police.

In a dual operation, the Las Vegas Metropolitan Police Department and the FBI monitored telephone calls to the two residences over a 60–day time period.[1] On

---

1. As required by the Nevada wiretap statute, the government sought and obtained an extension of the wiretap authorization upon expiration of the original 30–day authorization issued by the court.

January 29, 1986, the police arrested Ronald Bryl at his residence on unrelated charges. Pursuant to a search warrant, the police seized a number of firearms and a small package. The package, which bore a return address to "C. Dietz" at William Homick's address, was found to contain a diamond ring that was part of the property stolen from the Tiptons. The next day, Bryl telephoned William Homick and asked William to tell Steve about his arrest and the seizures. The following day, January 31, the police intercepted a series of conversations between William Homick and Dietz, Robert Homick, and Bryl, in which the parties discussed possible methods of recovering the ring from the police.

On February 1, 1986, Detective Dillard of the Las Vegas police contacted appellant Dietz. In response to Dillard's questions, Dietz claimed ownership of the ring and stated that he had purchased it over ten years ago. Dillard informed Dietz that he would have to present some proof of ownership in order to reclaim the ring. Later that night, the police intercepted a telephone call from Steve Homick in California to Delores Homick at the residence in Las Vegas. Steve told Delores to type out an affidavit stating that she knew the ring belonged to Dietz. Delores agreed to do so.[2]

Between February 2 and February 20, the police intercepted one telephone call between Steve and Delores, one call between Delores and Dietz, and three calls between Dietz and the Homick brothers that related to the ring. Additionally, both Delores and Dietz were mentioned in various conversations between others regarding the ring. During the conversation between Dietz and Delores, Dietz coached Delores on the wording of the affidavit and attempted to get her to agree that she had seen the ring in California years before. However, Delores indicated that she had only seen the ring since moving to Las Vegas. Several days later, Steve telephoned Delores from Houston, Texas, and instructed her to destroy the affidavit and

"flush it down the toilet." Finally, on February 20, William Homick telephoned Dietz and told him to inform the police that he had been unable to obtain an affidavit. Dietz decided to do nothing.

Delores and Dietz, along with Steve, William, and Robert Homick, were indicted by a federal grand jury for conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and wire fraud, in violation of 18 U.S.C. § 1343. The wire fraud and conspiracy charges were originally part of an eleven-count indictment that included counts relating to the Tipton robbery and murders. However, the court granted Delores's motion to sever the charges against her and Dietz for trial. After a jury trial, Delores and Dietz were convicted on both charges. The court sentenced Delores to five years probation under special conditions, including 100 hours of community service, and imposed a fine of $1,000. Dietz received a sentence of ninety days imprisonment for the wire fraud offense and four years probation plus a fine of $2,000 for the conspiracy offense. These timely appeals followed.

## DISCUSSION

### I. Wiretap Evidence

Delores appeals the district court's denial of her motion to suppress evidence obtained from the wiretaps placed on her three telephone lines. She contends that the government failed to meet the necessity requirement for issuance of a wiretap authorization, failed to minimize the interceptions, and improperly intercepted conversations outside the scope of the authorization. She further argues that she was entitled to an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), on the question whether the affidavit submitted in support of the government's application was based on false statements. Because Delores had a reasonable expectation of privacy as to the residence that she shared with Steve,

2. According to the government, this conversation between Steve and Delores was not recorded because of an equipment malfunction. The

monitoring officers testified at trial as to the content of the conversation.

she has standing to challenge the interception orders.

We generally review the district court's denial of a motion to suppress evidence *de novo*. *United States v. Thomas,* 844 F.2d 678, 680 (9th Cir.1988). Evidence obtained pursuant to a state court wiretap authorization is not subject to suppression in federal court if that evidence was obtained in compliance with federal law. *United States v. Chavez–Vernaza,* 844 F.2d 1368, 1372 (9th Cir.1987).

An application for a wiretap authorization must contain a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c); *United States v. Brone,* 792 F.2d 1504, 1506 (9th Cir.1986). However, the statute does not require that the government "exhaust every conceivable alternative before obtaining a wiretap." *Id.* (citing *United States v. Spagnuolo,* 549 F.2d 705, 710 (9th Cir. 1977)). Because the question of necessity is factual in nature, we apply an abuse of discretion standard to the district court's determination that the government made the required showing. *United States v. Commito,* 918 F.2d 95, 98 (9th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 224, 116 L.Ed.2d 181 (1991).

The affidavit filed by Detective Dillard in support of the application described the evidence implicating Steve Homick in the Tipton murders. That evidence included pen registers showing telephone calls from the Homick residence to the Tipton residence and statements by an FBI informant that Steve had admitted that he was planning to kill someone. The affidavit further stated that available investigative methods had proved insufficient to allow the government to identify all suspected conspirators in the Tipton robbery and murders, and that investigative leads were "at a standstill." We conclude that the district court did not abuse its discretion in determining that electronic surveillance of the Homick brothers was necessary to enable the investigation to proceed.

Section 2518(5) of the wiretap statute contains a requirement that the government minimize surveillance. The question whether the government failed to comply with section 2518(5) requires an examination of the monitoring officers' conduct in light of the particular circumstances of the case. *Scott v. United States,* 436 U.S. 128, 137–38, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). The government admits that it intercepted numerous calls to the Homick residence that were entirely unrelated to the investigation. However, the Court has indicated that the interception of even a relatively high percentage of nonpertinent calls is an inaccurate indicator of whether or not the government complied with the minimization requirement. *Id.* at 140, 98 S.Ct. at 1724. Because many telephone calls are brief in duration, a listener frequently cannot determine a particular call's relevance to the investigation before the call has been completed. *Id.* The government testified that its agents were instructed to listen to all conversations for two minutes and to terminate surveillance after that time unless the conversation was relevant to the robbery and murders specified in the wiretap order. Evidence at trial indicated that the monitoring agents followed those orders. In light of *Scott,* and in the absence of further evidence regarding the nature and length of telephone calls in general and calls involving criminal conspiracy in particular, we are reluctant to conclude in this case that the two-minute cutoff violated the statute. However, we express no view of the propriety of employing such a procedure in other circumstances or of the result we might reach on the basis of a fuller evidentiary record.

Delores further argues that because she was not the target of either the initial interception order or the extension, she should not have been subjected to random eavesdropping by law enforcement agents seeking information about others. "[A] wiretap application must name an individual if the [g]overnment has probable cause to believe that the individual is en-

gaged in the criminal activity under investigation...." *United States v. Donovan,* 429 U.S. 413, 428, 97 S.Ct. 658, 668, 50 L.Ed.2d 652 (1971). However, the government may seek a wiretap authorization in order to discover the identities of suspected co-conspirators, and a conversation involving a party not named in the authorization that reveals that party's involvement in the criminal activity under investigation is admissible. *United States v. Kahn,* 415 U.S. 143, 156–57, 94 S.Ct. 977, 984–85, 39 L.Ed.2d 225 (1974); *see also United States v. Turner,* 528 F.2d 143, 158 (9th Cir.1975), *cert. denied sub nom. Grimes v. United States,* 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975), *and Hackett v. United States,* 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1976). Thus, the government was not required to name Delores in its initial application in order to utilize the intercepted conversations. Delores was named, however, in Detective Dillard's affidavit submitted in support of the government's application for extension of the original order. That was sufficient for purposes of the extension. When a party is properly named in a wiretap authorization, there is a valid reason for extension of that authorization, and the affidavit submitted in support of the application for extension notifies the court that another party's conversations may also be intercepted in connection with the investigation, the government has fulfilled its statutory obligation to keep the court apprised of the nature of its investigation, and the other party's conversations are admissible.

■ Next, Delores argues that evidence relating to offenses other than those originally specified in the wiretap authorization—namely, the Tipton robbery and murders—is inadmissible. Therefore, she reasons, the district court was required to suppress evidence relating to the plan to obtain the ring from the police. Section 2517(5) of the wiretap statute requires the government to submit an additional application when the interceptions it obtains "relate to offenses other than those specified in the order of authorization and approval." 18 U.S.C. § 2517(5). Because the attempt to obtain the ring arose out of and was closely related to one of the original crimes specified in the wiretap application, we are not convinced that the wire fraud offense falls within the "other offenses" provision of the statute. In any event, in its application for extension of the wiretap authorization, the government included information relating to the scheme to recover the ring from the police. Because the government kept the court apprised of that information, it was not error for the court to allow the government to charge Delores with wire fraud and conspiracy to commit wire fraud.

■ Finally, Delores contends that she was entitled to a hearing on the question whether Detective Dillard knowingly included false statements in his affidavit in support of the government's wiretap application. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). In particular, Delores asserts that Dillard deliberately portrayed Steward Siegel, the FBI informant who provided the original evidence linking Steve with the Tipton robbery and murders, as a citizen informant rather than as a paid informant with a history of criminal activity. She argues that Dillard's alleged misstatements prevented the state court judge from arriving at an accurate assessment of Siegel's credibility.

■ The necessity showing required by 18 U.S.C. § 2518(3)(c) is subject to *Franks* standards. *United States v. Ippolito,* 774 F.2d 1482, 1485 (9th Cir.1985). We review the denial of a *Franks* hearing de novo. *United States v. Ritter,* 752 F.2d 435, 439 (9th Cir.1985).

Examination of Detective Dillard's affidavit reveals that Dillard properly portrayed Siegel as an individual with a criminal history who had been paid by the FBI in the past. Delores further argues that because Dillard was not personally acquainted with Siegel, Dillard had a duty to verify the information that Siegel provided. Assuming *arguendo* that such a duty existed in this case and that Dillard failed to fulfill that duty, it does not appear that Dillard acted deliberately or with reckless disregard for the truth. "Allegations of

negligence or innocent mistake are insufficient" to warrant a *Franks* hearing. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. The district court's refusal to grant Delores a *Franks* hearing was proper.

### 2. Other Evidentiary Rulings

■ Delores argues that two of the district court's other evidentiary rulings constitute reversible error. First, she contends that the court improperly admitted evidence of telephone conversations between others regarding her alleged role in the conspiracy. When admitting the statement of a co-conspirator, the court must ultimately satisfy itself that a conspiracy existed between the declarant and the defendant, and that the statement was made " 'during the course of and in furtherance of the conspiracy.' " *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987) (quoting Fed. R.Evid. 801(d)(2)(E)). We review the district court's determination that a conspiracy existed for clear error. *United States v. Zavala–Serra*, 853 F.2d 1512, 1515 (9th Cir.1988). Because we find the evidence sufficient to demonstrate that a conspiracy involving Delores existed, we conclude that no such error occurred.

■ Second, Delores contends that the district court improperly excluded expert testimony regarding battered woman syndrome and thereby deprived her of her theory of defense. The court excluded the proffered testimony for failure to comply with the notice provision of Fed.R.Crim.P. 12.2(b).[3] Delores contends that because Rule 12.2(b) further provides that the district court "may for cause shown allow late filing of the notice or make such other order as may be appropriate," the court's choice of the draconian sanction of exclusion was an abuse of discretion.

At trial, Delores contended that she was a battered woman, and that her acquiescence to Steve's orders to falsify an affidavit concerning the ring was simply an example of his complete domination over her rather than a willing and voluntary act. Counsel for Delores was not aware of the nature of the relationship between Delores and Steve until Delores's sister-in-law spoke with him a few days before trial was due to begin. Counsel states that he immediately notified the court and the government of his plans to present expert testimony regarding battered woman syndrome. However, no *written* notice was received.

Delores argues that the district court should have exercised its discretion to impose less severe sanctions because the violation of Rule 12.2(b) was neither willful nor prejudicial to the government, and because the evidence precluded was central to her theory of defense. *Taylor v. Illinois*, 484 U.S. 400, 413–15, 108 S.Ct. 646, 655–56, 98 L.Ed.2d 798 (1988); *Fendler v. Goldsmith*, 728 F.2d 1181, 1188–90 (9th Cir. 1983). We need not consider this argument. Under the circumstances of this case, the battered woman defense was unavailable to Delores. Thus, the exclusion of the expert testimony was harmless.

■ The battered woman defense is a species of the defense of duress, which has three elements: "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm." *United States v. Contento–Pachon*, 723 F.2d 691, 693 (9th Cir.1984) (citing *United States v. Shapiro*, 669 F.2d 593, 596 (9th Cir.1982)). We recognize that the unique nature of battered woman syndrome justifies a somewhat different approach to the way we have historically applied these principles. *Cf. United States v. Johnson*, 956 F.2d 894, 897–99 (9th Cir.1992); *United States v. Winters*, 729 F.2d 602, 605 (9th Cir.1984). However, we do not think that the facts of this case fall within the scope of any reasonable approach to the battered woman

---

**3.** Fed.R.Crim.P. 12.2(b) provides, in relevant part:

> If a defendant intends to introduce expert testimony relating to a ... mental condition of the defendant bearing upon the issue of his

guilt, he shall, within the time provided for the filing of pretrial motions or at such time as the court may direct, notify the attorney for the government in writing of such intention....

defense, no matter how we modify the traditional duress standards.

When the events charged in the indictment took place, Steve and Delores were divorced. Although Delores testified that Steve had moved back into the house, he was not even in Las Vegas when his calls to Delores were monitored. The two telephone calls from Steve to Delores that government agents overheard were made from California and Texas. There was nothing implicitly or explicitly threatening about either conversation. Delores readily agreed to say that she had seen the ring. Later, however, she told Dietz she would only say that she had seen it in California. She stubbornly stuck to her own version of what she wished to say and indicated no concern whatsoever over what her ex-husband's reaction might be to her lack of cooperation. Under these circumstances, Delores cannot establish that her participation in the conspiracy was a result of her alleged status as a battered woman. We therefore conclude that the district court's decision to exclude the expert testimony was, if erroneous, harmless.

### 3. Sufficiency of the Evidence

■■■ Delores contends that the government produced insufficient evidence to support the conclusion that she was a member of the conspiracy that existed among her husband and his brothers. *United States v. Murray*, 751 F.2d 1528, 1534 (9th Cir.) (" '[M]ere association and activity with a conspiracy is insufficient.... ' ") (quoting *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir.1979)), *cert. denied sub nom. Moore v. United States*, 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed.2d 335 (1985). The evidence linking Delores with the conspiracy consisted of two monitored telephone conversations between Delores and Steve Homick and one conversation between Delores and Dietz. The monitoring officers testified that in the first conversation between Delores and Steve, Delores appeared to know nothing about any ring belonging to Dietz, and Steve coached her concerning its description. In her subsequent conversation with Dietz, Delores told him that she did not remember seeing the ring in Cali-

fornia, but did remember seeing it in Las Vegas. Finally, in the second conversation between Delores and Steve, Steve told Delores to burn the affidavit and flush it down the toilet. He further stated, "you don't know anything, you don't wanna know anything and I'll call Charlie [Dietz] and tell him." Delores agreed.

The government argues that the three conversations establish that Delores was aware that Dietz's claim of ownership was fraudulent and that she willingly became a part of that fraud. We agree. Based on the content of the three conversations, a jury could conclude beyond a reasonable doubt that Delores was a willing and full participant in the conspiracy to regain the ring from the police. Accordingly, we reject Delores's challenge to the sufficiency of the evidence.

### 4. Motion for Mistrial

■■■ At trial, Detective Dillard testified concerning Steve Homick's alleged involvement in the murders at the Tipton residence. The district court denied defendants' motion for a mistrial. Delores and Dietz contend that Dillard's testimony unfairly prejudiced them by creating an impression of guilt by association. We review the denial of a motion for a mistrial for abuse of discretion, *United States v. Charmley*, 764 F.2d 675, 677 (9th Cir.1985), and we conclude that no such abuse occurred here.

■■■ After Dillard referred to the murders, the district court elicited additional testimony that exculpated Delores and Dietz of any involvement in the murders. The court also issued a limiting instruction to the jury concerning the permissible uses of the other crimes evidence. *See United States v. Bradshaw*, 690 F.2d 704, 709 (9th Cir.1982), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983). More important, it was the defendants themselves who first raised Steve Homick's role in the murders. Because defendants represented to the district court on numerous occasions that their strategy included portraying Steve Homick as a violent, brutal

murderer, and because defendants so informed the jury during opening statements, it was not clearly error for the court to admit Dillard's testimony to that effect.

*5. Constructive Amendment or Prejudicial Variance*

■ Delores and Dietz claim that the proof offered against them at trial constituted a constructive amendment of the indictment, or, in the alternative, a variance that was prejudicial. The indictment charged them with participating in a "conspiracy to obtain through misrepresentation a ring which belonged to Bobby Jean Tipton" and "knowingly devis[ing] and intend[ing] to devise a scheme and artifice to defraud and obtain a thing of value." Appellants contend that knowledge that the ring was stolen was a material element of the charges against them and that the evidence offered at trial did not establish such knowledge.

■ A constructive amendment of an indictment occurs when the charges in the indictment are " 'altered ... after the grand jury has last passed upon them.' " *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir.1984) (quoting *United States v. Cusmano*, 659 F.2d 714, 718 (6th Cir.1981)). A constructive amendment is considered prejudicial *per se*. *Id.* (citing *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960)). A variance occurs when the evidence at trial " 'proves facts materially different than those alleged in the indictment,' " *id.* (quoting *Cusmano*, 659 F.2d at 718), and the defendant must show prejudice in order to obtain reversal, *id.* at 587 (citing *United States v. Kaiser*, 660 F.2d 724, 730 (9th Cir.), *cert. denied*, 455 U.S. 956, 102 S.Ct. 1467, 71 L.Ed.2d 674 (1981)).

We have previously held that the government's failure to prove the identity of the person defrauded as stated in an indictment for fraud did not constitute either a constructive amendment or a prejudicial

variance. *Von Stoll*, 726 F.2d at 586–87. Nor does the government's failure in a prosecution for receiving stolen goods to prove knowledge of the circumstances of the theft constitute such an amendment or variance. *United States v. Hollinshead*, 495 F.2d 1154, 1156 (9th Cir.1974). Under the reasoning of our prior decisions, no amendment or variance occurred in the instant case. The evidence offered at trial did not "affect the sufficiency of the complaint or alter the crime charged," and no "substantial rights of the parties" were affected by the government's failure to prove that Delores and Dietz knew of the prior theft of the ring. *Von Stoll*, 726 F.2d at 587. In order to support defendants' convictions, the government was not required to show that Delores and Dietz knew that the ring was *stolen*. It was only required to prove that they were members of a conspiracy and that in furtherance of that conspiracy they sought to obtain by fraud a ring that they knew did not rightfully belong to Dietz.

*6. Jury Instruction Regarding Good Faith*

■ Delores and Dietz challenge the district court's refusal to give Dietz's proposed jury instruction regarding a good faith defense. The proposed instruction stated:

It is Mr. Dietz' contention that he did not knowingly conspire with anyone to obtain through misrepresentation a ring *which belonged to Bobbie Jean Tipton, deceased,* which ring was in possession of the Law Vegas Metropolitan Police Department, through the creation of false proof of ownership and that he acted with an honest and good faith belief *that he was doing a favor to get the ring and* that he was not knowingly and willfully defrauding anyone.

After discussion, the district court amended the proposed instruction by eliminating the underlined portions.[4] Dietz contends

4. The actual jury instruction given by the court reads as follows:
It is Mr. Dietz' contention that he did not knowingly conspire with anyone to obtain

through misrepresentation a ring, which was in the possession of the Las Vegas Metropolitan Police Department, through the creation of false proof of ownership and that he acted

that the redaction denied him his theory of defense.

■ The trial court has broad discretion to determine the specific language of jury instructions. *United States v. Solomon*, 825 F.2d 1292, 1295 (9th Cir.1987), *cert. denied*, 484 U.S. 1046, 108 S.Ct. 782, 98 L.Ed.2d 868 (1988). A defendant is "not entitled to the particular and specific language he proposes." *United States v. Washington*, 797 F.2d 1461, 1476 (9th Cir. 1986). Rather, the district court need only ensure that the jury instruction "fairly and adequately cover[s] the defendant's theor[y] of defense." *Solomon*, 825 F.2d at 1295. Delores's and Dietz's theory of defense was that they acted in good faith and did not knowingly participate in a fraud. While it might have been preferable to include the second omitted clause, the defense theory is adequately covered by the jury instruction as amended by the trial court.

Appellants' convictions are AFFIRMED.

with a [sic] honest and good faith belief that he was not knowingly and willfully defrauding anyone.