990 F.2d 1264
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America Plaintiff-Appellee,
v.
James Walter NEWBERRY, Defendant-Appellant.
 No. 91-50339.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 4, 1993.
Decided March 8, 1993.
 
 Before CANBY, BOOCHEVER and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 James Newberry appeals from the district court's denial of his motion to suppress evidence. During a routine traffic stop of Newberry and his wife Karen on September 29, 1990, California Highway Patrol Officer Frederick Laurn discovered a loaded .22 magnum semi-automatic pistol and several baggies of marijuana in a briefcase in the back hatch of the car. That discovery created probable cause for a search of the entire vehicle, which revealed a bag containing 1.5 kilograms of methamphetamine and resulted in the Newberry's arrest. The critical inquiry on this appeal is whether Officer Laurn's actions in discovering the contents of the briefcase were proper.
 
 
 3
 The briefcase contains a fiberboard "desk" partition that divides the briefcase into two sections. Although Officer Laurn testified at the suppression hearing that he immediately saw a gun in the bottom section when Newberry opened the briefcase (allegedly to look for identification), the district court concluded that Officer Laurn must have reached over and lifted the desk partition himself. The court held that this action was "justified by concern for officer safety." R.T. 2/26/91 at 136
 
 
 4
 At the suppression hearing, the district court reviewed conflicting declarations and heard conflicting testimony, and made findings of fact to support its ruling. We must accept these findings unless they are clearly erroneous. United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir.1992). The ultimate conclusion of the lawfulness of a search, however, is reviewed de novo. See United States v. Homick, 964 F.2d 899, 903 (9th Cir.1992); United States v. Litteral, 910 F.2d 547, 553 (9th Cir.1990).
 
 
 5
 Terry v. Ohio, 392 U.S. 1 (1968), held that
 
 
 6
 where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, ... he is entitled for the protection of himself ... to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.
 
 
 7
 Id. at 30. For such a protective search to be justified,
 
 
 8
 [t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.
 
 
 9
 Id. at 27 (citations and footnote omitted). Thus, at minimum, an officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. 40, 64 (1968). The fact that an individual is validly stopped based on a reasonable suspicion of criminal activity is not sufficient to justify a concomitant search. United States v. Thomas, 863 F.2d 622, 628 (9th Cir.1988); United States v. Post, 607 F.2d 847, 851 (9th Cir.1979).
 
 
 10
 Although Terry stated an objective test of whether a "reasonably prudent man" would be concerned for his safety, 392 U.S. at 27; accord United States v. Garcia, 909 F.2d 389, 391 (9th Cir.1990); Thomas, 863 F.2d at 628, other Supreme Court cases have apparently added a subjective requirement. See Michigan v. Long, 463 U.S. 1032, 1047 (1983) (Terry search allowed "[w]hen the officer has a reasonable belief" that suspect is armed and presently dangerous); id. at 1052 n. 16 ("the officer must have an articulable suspicion that the suspect is potentially dangerous"); Ybarra v. Illinois, 444 U.S. 85, 93 (1979) (frisk permitted when officer "reasonably believes or suspects" detainee to be armed). We have reconciled these cases by requiring the officer to have a subjective belief that is objectively reasonable. United States v. Prim, 698 F.2d 972, 975 (9th Cir.1983); accord United States v. Lott, 870 F.2d 778, 783-84 (1st Cir.1989).
 
 
 11
 The experienced trial judge showed great patience in his conduct of the suppression hearing and sincerely endeavored to resolve what appeared to him to be factual inconsistencies. We conclude, however, that the district court erred in its implied finding that Officer Laurn had the requisite subjective belief that James and Karen Newberry were armed and dangerous.[1] Indeed, this conclusion is virtually compelled by Officer Laurn's admirably candid testimony at the suppression hearing that before discovering the gun he had no reason to believe the Newberrys were armed and had no concern for his safety beyond the general suspicion he possesses every time he pulls over a car. R.T. 2/25/91 at 48-50; R.T. 2/26/91 at 7. A general concern for safety, without specific and articulable facts supporting a reasonable suspicion that a particular suspect is armed and dangerous, has never been held sufficient to justify a Terry search. Were we to accept the district court's findings, we would therefore be required to reverse. We are troubled, however, by several aspects of those findings.
 
 
 12
 First, the district court concluded that Officer Laurn did not see the gun until he lifted the desk partition because "[t]he [desk] does not come up when the briefcase is opened by itself." R.T. 2/26/91 at 133. Similarly, the district court examined a photograph of Officer Laurn holding up the desk to display the briefcase's contents and concluded that the briefcase "couldn't look that way [when it was opened] until the [desk] was lifted." Id. at 136. These conclusions fail to acknowledge the district court's own finding that the underside of the desk partition may be snapped to a strap on the interior of the briefcase lid. R.T. 2/26/91 at 62. If the strap is attached to the desk, the desk comes up with the lid when the briefcase is opened. Thus the district court's finding that the desk cannot possibly come up with the briefcase lid is clearly erroneous, and the finding that the desk was down when Newberry opened the briefcase is questionable absent any indication in the record that the court considered the possibility that the desk was attached to the briefcase lid.
 
 
 13
 Moreover, the lack of a clear finding that the desk was not snapped to the briefcase at the time the gun was discovered leads us to believe that the district court may have mistakenly thought that the interior strap was broken. Our concern is based on Newberry's testimony at the suppression hearing concerning a "flap" connecting the desk to the briefcase that had been "gone for years." Id. at 75. The transcript of Newberry's testimony regarding the briefcase does not make clear to which "flap" he was referring. In her brief before this court, however, the Assistant United States Attorney who prosecuted the case and argued at the suppression hearing expresses the mistaken belief "that the snap on the desk was broken, so that when the briefcase was opened, the desk stayed down." Appellee's Brief at 17. Our own examination of the briefcase has revealed that the snap on the desk and the interior strap to which it attaches are wholly functional. The lack of a finding as to whether the desk was snapped to the lid makes us question whether the district court was under the same misapprehension as the government.
 
 
 14
 Finally, we have difficulty reconciling the district court's findings with its assessment of the witnesses' credibility. The court stated that it "believe[d] the officer's general credibility [was] good" and that it accepted his testimony except with regard to the revealing of the gun, as to which the court believed Officer Laurn did not "remember[ ] the exact sequence correctly." R.T. 2/26/91 at 136. Conversely, the court gave absolutely no credence to the Newberrys' testimony, rejecting among other things their contentions that the gun was in a closed manila shipping envelope and that there was no marijuana roach on the console where the officer stated he saw one. The evidence also showed that Karen and James Newberry lied to Officer Laurn. Karen said James' name was "Joe" and claimed not to know his last name; James gave the false name of "Joe Stallon." James' stated purpose in opening the briefcase containing the loaded weapon, to look for identification, is implausible as he had already falsely identified himself.
 
 
 15
 In light of the district court's positive assessment of Officer Laurn's credibility and its failure to give any weight to the Newberrys' testimony, the finding that the court reached regarding the opening of the briefcase appears to be inconsistent. Officer Laurn stated that he could not recall whether the desk was up or down, but knew only that the gun was fully exposed to him when Newberry opened the briefcase. The Newberrys both testified that James opened the briefcase with the desk in the down position, searched through the upper compartments, and closed the case, after which the officer seized the briefcase, reopened it, and lifted the desk. The district court, however, found that the officer reached over and lifted the lid while James had the briefcase open. Thus even in the single area where the court rejected Officer Laurn's testimony, it did not accept the version advanced by the defendants. Instead, the court concluded that "[w]hat [Officer Laurn] said I think logically has to leave out a step, even if you accept his evidence. And that is that the lid had to be lifted for the gun to be where it was ... when he saw it." Id. at 103 (emphasis added). As discussed above, no logical gap exists if the interior strap was attached.
 
 
 16
 If the snap on the briefcase lid was fastened to the desk when Newberry opened the briefcase, which coincides with the officer's testimony, the gun was properly seized under the plain view exception to the Fourth Amendment. See United States v. Nance, 962 F.2d 860, 862-63 (9th Cir.1992). While we cannot say that the district court's finding regarding how the gun was revealed is clearly erroneous, the apparent mistaken factual assumptions and inconsistencies underlying the finding lead us to seek clarification.
 
 
 17
 Accordingly, we remand for additional or revised findings on the limited question of whether the desk was attached to the briefcase lid when Newberry opened the briefcase. This panel will retain jurisdiction over the matter.
 
 
 18
 REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We therefore have no occasion to consider whether the scope of a valid Terry frisk would have extended to the contents of the briefcase