65 F.3d 176
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Vaaiga Ina CLARK, and Johnny Clark, Defendants-Appellants.
 Nos. 94-50062, 94-50064.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 2, 1995.
Decided Aug. 1, 1995.
 
 Before: J FLETCHER, BRUNETTI, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendants Johnny Clark ("Johnny") and Vaaiga Ina Clark ("Vaaiga"), husband and wife, appeal their jury convictions and sentences on drug trafficking charges. On appeal, the Clarks argue that evidence obtained from a court-ordered wiretap should be suppressed because the Government did not demonstrate the required necessity, and because it failed to follow adequate minimization procedures. In addition, Johnny Clark challenges one of his convictions for distributing cocaine, arguing that the Government's evidence was insufficient. Johnny also argues that the district court erred by denying him a two-point reduction for acceptance of responsibility. Vaaiga contends that the district court erred by failing to comply with Rule of Criminal Procedure 32(c)(3)(D) at sentencing.
 
 
 3
 We affirm the convictions, and we vacate their sentences and remand for resentencing.
 
 FACTS
 
 4
 Beginning in September 1991, DEA agents, in cooperation with local law enforcement officers, began an investigation of a suspected cocaine trafficking organization operated by the Clarks out of the Dana Strand Housing Projects in Wilmington, California. Through the use of the motor vehicle registry, the Criminal Information Index, citizen complaints, informers, toll records, pen registers, an undercover officer, and physical surveillance, the agents discovered extensive evidence of drug trafficking activity by the Clarks and others.
 
 
 5
 On several occasions, the agents conducted surveillance and observed Johnny engage in what appeared to be a series of drug transactions. The agents also learned that Johnny told an employee of Ina's Fashions, a business owned by the Clarks and operated by Vaaiga, that he was in the business of selling drugs.
 
 
 6
 However, not all of the investigators' efforts were completely successful. Johnny Clark refused to deal with an undercover officer who sought on several occasions to buy drugs from him. In addition, both Johnny and Vaaiga engaged in counter-surveillance techniques -- erratic driving, many stops, circuitous routes, and close observation of surrounding traffic -- and were able to evade surveillance units on numerous occasions. Furthermore, although four confidential informants told investigators that they had purchased cocaine from Johnny, none could provide adequate information concerning the extent and operation of the drug enterprise. Finally, the isolated locations of two of the drug distribution centers made undetected physical surveillance very difficult; the Clark residence was located on a cul-de-sac, and the apartment in the projects was located off the street along a pedestrian walkway. All of this information was reflected in the affidavit supporting the request for the wiretap order.
 
 
 7
 On October 6, 1992, the Government appeared before U.S. District Court Judge Terry Hatter and obtained permission to wiretap communications over four phones used by the suspects. The phones were monitored for the following three weeks, and investigators were able to intercept numerous calls concerning narcotics transactions. The investigation came to an end on February 24, 1993, when the Clarks and seven others were arrested on drug charges.
 
 PRIOR PROCEEDINGS
 
 8
 On March 9, 1993, a federal grand jury indicted the Clarks along with seven co-defendants. The seven co-defendants ultimately pled guilty, and the Government prepared a redacted indictment for the Clarks. In Count One, both Johnny and Vaaiga were charged with conspiracy to distribute more than 50 grams of cocaine base and more than 500 grams of cocaine in violation of 21 U.S.C. Secs. 846 and 841(a)(1). In Counts Two through Four, Johnny was charged with possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1).
 
 
 9
 Johnny and Vaaiga entered "not guilty" pleas. Before trial, the defendants moved to suppress evidence obtained from the wiretap. The district court denied this motion. At the close of the Government's case-in-chief, the district court entered a judgment of acquittal on Count Three against Johnny. The jury returned guilty verdicts against Johnny and Vaaiga on the remaining charges.
 
 
 10
 Johnny Clark was sentenced to concurrent sentences of 188 months imprisonment and 5-year terms of supervised release. Vaaiga Clark was sentenced to 132 months imprisonment and a 5-year term of supervised release.
 
 JURISDICTION
 
 11
 The district court had jurisdiction pursuant to 18 U.S.C. Sec. 3231. This Court has jurisdiction pursuant to 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742.
 
 DISCUSSION
 I. NECESSITY FOR WIRETAP
 
 12
 On appeal, Johnny and Vaaiga Clark contend that the district court erred by failing to suppress evidence obtained from the wiretap because the necessity requirement of 18 U.S.C. Sec. 2518(1)(c) was not met. They argue that normal investigative techniques would have proved successful and that the affidavit contained only conclusory allegations. We find that this claim lacks merit.
 
 A.
 
 13
 The district court's denial of a motion to suppress evidence is reviewed de novo. United States v. Feeney, 984 F.2d 1053, 1055 (9th Cir. 1993); United States v. Homick, 964 F.2d 899, 903 (9th Cir. 1992). The district court's factual finding that the Government made the required necessity showing is reviewed for an abuse of discretion. Homick, 964 F.2d at 903 (citing United States v. Commito, 918 F.2d 95, 98 (9th Cir. 1990), cert. denied, 502 U.S. 879 (1991)).
 
 
 14
 An application for a wiretap authorization must meet the "necessity" requirement set forth in 18 U.S.C. Sec. 2518 as follows:
 
 
 15
 (1) Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall ... include the following information:
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.
 
 
 19
 18 U.S.C. Sec. 2518.
 
 
 20
 The purpose of the necessity requirement is to ensure that wiretaps are not routinely employed as the first step in criminal investigations. United States v. Giordano, 416 U.S. 505, 515 (1990). However, the statute does not require that the Government "exhaust every conceivable alternative before obtaining a wiretap." United States v. Brone, 792 F.2d 1504, 1506 (9th Cir. 1986) (citing United States v. Spagnuolo, 549 F.2d 705, 710 (9th Cir. 1977)). The necessity requirement is to be interpreted in "a practical and commonsense fashion, and need not be used as a last resort." United States v. Bailey, 607 F.2d 237, 241 (9th Cir. 1979), cert. denied, 445 U.S. 934 (1980). Necessity is demonstrated where "normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time." Bailey, 607 F.2d at 242. Where the objective is to discover the full scope of the drug operation -- suppliers, major buyers or satellite conspirators -- the necessity requirement is met if normal investigative procedures have not succeeded in developing evidence against all members of the narcotics conspiracy. United States v. Torres, 908 F.2d 1417, 1422 (9th Cir.), cert. denied, 498 U.S. 948 (1990); Bailey, 607 F.2d at 242.
 
 B.
 
 21
 Agent Balo's 65-page affidavit in support of the Government's request for a wiretap provides ample basis for the district court's necessity finding. It demonstrates that during the preceding twenty-two months, normal investigative techniques had not succeeded in revealing the full scope of the drug organization, developing evidence against all of the suppliers and main customers, and identifying the disposition of the drug proceeds. The Balo Affidavit identified and described a number of shortcomings in traditional techniques to attain the investigator's goals.
 
 
 22
 First, the use of undercover agents was hampered both by the familiarity of the residents of the projects with one another, which made officers easily identifiable as outsiders, and the reluctance of Johnny Clark to deal with strangers. Several attempts to use an undercover agent to purchase drugs failed because Johnny Clark "did not want to deal with her and ... was also scared to deal with her."
 
 
 23
 Second, the investigators were unable to uncover the full scope of the conspiracy by using physical surveillance. Both defendants engaged in counter-surveillance techniques by driving evasively and observing the traffic closely. Torres, 908 F.2d at 1422-23 (necessity shown in part where counter-surveillance methods employed by suspects). In addition, the Clarks' residence is located on a cul-de-sac, and the apartment in the projects is located in the interior of the projects along a pedestrian walkway, making inconspicuous surveillance of both of these locations very difficult. Finally, although the agents had been able to observe, and in one case video tape, Clark engaging in what appeared to be drug transactions, observation alone could not conclusively establish that it was in fact drugs and cash that were being exchanged or that Clark was supervising the operation. See United States v. Brown, 761 F.2d 1272, 1276 (9th Cir. 1985) (surveillance failed to provide conclusive evidence of drug conspiracy); United States v. Kail, 612 F.2d 443, 447 (9th Cir. 1979) (surveillance unsuccessful in establishing all elements of offense), cert. denied, 446 U.S. 912 (1980).
 
 
 24
 Third, the usefulness of the agents' confidential informers was also limited. None of the four CI's were "insiders" to the organization. Cf. United States v. Simpson, 813 F.2d 1462, 1473 (9th Cir. 1987) (no necessity where informant is willing to testify and has knowledge of entirety of organization) (citing United States v. Ippolito, 774 F.2d 1482, 1486-87 (9th Cir. 1985)). They all lacked significant information regarding the inner workings of the organization. Torres, 908 F.2d at 1422; United States v. Echavarria-Olarte, 904 F.2d 1391, 1396 (9th Cir. 1990),; United States v. Carneiro, 861 F.2d 1171, 1177 (9th Cir. 1988); United States v. Sandoval, 550 F.2d 427, 430 (9th Cir. 1976), cert. denied, 434 U.S. 879 (1977). Moreover, CI1 and CI2 were serving prison sentences and thus unavailable to do further undercover work. CI3 had never had any personal contact with Clark. CI4 had only incomplete information concerning Clark's source for cocaine. Finally, all of the CI's are convicted drug dealers and therefore vulnerable to impeachment at trial.
 
 
 25
 The defendants suggest that necessity is not shown because one of these informers could have been used to facilitate further undercover investigation or to set up a controlled buy. However, even if these objectives could have been achieved -- a questionable assumption given Johnny's reluctance to deal with outsiders or those who had been arrested by the police -- the need for a wiretap to develop evidence against all of the members of the conspiracy would not have been eliminated. See Torres, 908 F.2d at 1422 & n.2 (controlled buy by undercover agent does not negate finding of necessity); Sandoval, 550 F.2d at 430 (limited infiltration of drug conspiracy does not negate necessity). Furthermore, "[t]he fact that the DEA could have taken different or some additional steps in its investigation does not demonstrate that the district court abused its discretion in upholding the wiretap order." Carneiro, 861 F.2d at 1178.
 
 
 26
 Fourth, pen registers could not reveal the identities of the parties or the contents of the calls. See Carneiro, 861 F.2d at 1177-78; Brone, 792 F.2d at 1506. In addition, the true identity of the subscriber was often difficult to ascertain because the suspects often used aliases when obtaining pagers and phones. Finally, search warrants were helpful only to the extent that the officers knew where to search and could establish probable cause to obtain a warrant. See United States v. Commito, 918 F.2d 95, 97-98 (9th Cir. 1990), cert. denied, 502 U.S. 879 (1991). In addition, search warrants would have jeopardized the investigation before the completion of its objectives. See Torres, 908 F.2d at 1422; United States v. Brown, 761 F.2d 1272, 1276 (9th Cir. 1985).
 
 
 27
 Based on the detailed showing made in the Balo Affidavit, we conclude that the district court's finding of necessity was not an abuse of discretion and that the denial of the defendant's motion to suppress was proper.
 
 
 28
 II. MINIMIZATION OF NON-PERTINENT WIRETAP CALLS
 
 
 29
 The defendants argue that the wiretap should have been suppressed because the Government failed to minimize the interception of non-pertinent conversations. We disagree.
 
 A.
 
 30
 "We review de novo whether the DEA properly minimized the monitoring of phone conversations not relevant to its investigation as required by 18 U.S.C. Sec. 2518(5)." United States v. Torres, 908 F.2d 1417, 1423 (9th Cir. 1990) (citing United States v. Abascal, 564 F.2d 821, 827 (9th Cir. 1977), cert. denied, 435 U.S. 953 (1978)). Where the defendants do not challenge the introduction of specific conversations, as is the case here, "we only examine whether the government has shown a prima facie case of compliance with the minimization requirement." Id. (citing United States v. Turner, 528 F.2d 143, 157 (9th Cir. 1975), cert. denied, 423 U.S. 996 (1976)).
 
 
 31
 The Government must conduct wiretaps so as to "minimize the interception of communications not otherwise subject to interception." 18 U.S.C. Sec. 2518(5). Minimization must be objectively reasonable in the circumstances to withstand scrutiny. Scott v. United States, 436 U.S. 128, 137-38 (1978). "The mere interception of calls unrelated to the drug conspiracy does not indicate a failure to meet the minimization requirement." Torres, 908 F.2d at 1423 (citing Scott, 436 U.S. at 140-41). "[W]hen the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise." Scott, 436 U.S. at 140. "[T]he interception of even a relatively high percentage of nonpertinent calls is an inaccurate indicator of whether or not the government complied with the minimization requirement. Because many phone calls are brief in duration, a listener frequently cannot determine a particular call's relevance to the investigation before the call has been completed." United States v. Homick, 964 F.2d 899, 903 (9th Cir. 1992) (citing Scott, 436 U.S. at 140).
 
 B.
 
 32
 Here, the DEA adopted reasonable procedures to ensure compliance with the minimization requirement. Monitoring agents were instructed on the requirements and need for minimization, and were required to read the minimization guidelines. Supervising agents were in the monitoring room during the wiretap, and an Assistant United States Attorney was available on-call to answer questions concerning minimization. These procedures have been found to constitute a prima facie showing of compliance with the minimization requirement. Torres, 908 F.2d at 1423. In addition, the wiretap was subject to ongoing supervision by Judge Hatter. See 18 U.S.C. Sec. 2518(10)(a).
 
 
 33
 Turning to the actual minimization here, it is apparent that the agents acted reasonably. During the course of the wiretap, 28 percent of the monitored calls were minimized. Furthermore, the wiretap lasted only three weeks, and before the first ten-day period expired, the agents stopped all interceptions of calls at Ina's Fashions and the housing project. See United States v. Chavez, 533 F.2d 491, 493 (9th Cir.) ("[O]ne of the most obvious ways to minimize is to use the tap for only a short time."), cert. denied, 426 U.S. 911 (1976).
 
 
 34
 The non-pertinent calls that were not minimized are attributable to several factors. First, and most importantly, sixty-five percent of the non-pertinent calls which were not minimized were of short duration, lasting less than two minutes. Cf. Homick, 964 F.2d at 903 (calls less than two minutes in duration very difficult to minimize). In addition, the use of code language and jargon at times made it difficult to determine whether the call was pertinent. See United States v. Turner, 528 F.2d at 157-58 (use of code necessitates longer interception). Finally, calls in the Samoan language were never minimized, so that they could be translated and reviewed for relevance. See Chavez, 533 F.2d at 494 (calls in foreign languages justified more extended monitoring).
 
 
 35
 Vaaiga Clark argues that the minimization procedures were inadequate because calls involving children were not routinely minimized. However, as the Government points out, the fact that a child answers the phone does not necessarily mean that a call is not drug-related. Cf. Dennis Hevesi, Gang Leader Details Crimes of Drug Ring, N.Y. Times, March 1, 1995, at B1 (reporting that drug-dealer used children as young as 12 as couriers and lookouts).
 
 
 36
 We hold that the Government met its burden of demonstrating a prima facie case of reasonable efforts to minimize the interception of non-pertinent calls.
 
 III. SUFFICIENCY OF EVIDENCE ON COUNT FOUR
 
 37
 Johnny Clark contends that the evidence is insufficient to prove that he had possession of cocaine with intent to distribute on October 16, 1992, as charged in Count Four of the indictment. He argues that the Government failed to prove either his knowledge of the contents of the bag or his possession of it. This claim cannot withstand scrutiny.
 
 A.
 
 38
 This court must determine whether, "'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1453 (9th Cir.), cert. denied, 478 U.S. 1007 (1986) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)). In evaluating the evidence, the appeals court must draw all reasonable inferences favorable to the Government. United States v. Arriaga-Segura, 743 F.2d 1434, 1435 (9th Cir. 1984).
 
 
 39
 To prevail on Count Four, the Government must prove that Clark knowingly possessed cocaine base with intent to deliver it to another person. 21 U.S.C. Sec. 841(a)(1).
 
 B.
 
 40
 Viewed in the light most favorable to the Government, the evidence in this case is sufficient to support the conviction.
 
 
 41
 On the morning of the incident, Clark was overheard on the wiretap saying that he was "cooking" and "would be there in the next few minutes." Later that day, Clark told Gutierrez to "bring four." Gutierrez said later that he had a "guy" deliver "the stuff" to "the store." Johnny Clark was then observed at Ina's Fashions with a Samoan man, Frank Maulupe. After briefly entering the store, they drove away and were then stopped by a L.A. County Sheriff. The Sheriff observed Maulupe, the driver, reach under the seat for a plastic bag before fleeing on foot. As the officer was pursuing Maulupe, Johnny Clark got into the driver's seat and drove away. Both men got away, but the officer found a McDonald's bag containing cocaine and a pager belonging to one of the co-conspirators in a vacant lot nearby. Later that night, in wiretapped conversations Johnny told Vaaiga that "Spank" had "run with the stuff" and that "we can beat this case," and that if "I got to do time, I go do time then." Vaaiga then commented to a co-conspirator that they had lost "a whole animal" (kilogram). Vaaiga also told another person that Johnny spent the night away from home to avoid the police and to "make up for that loss."
 
 
 42
 This evidence, viewed in the light most favorable to the Government, is sufficient for a fact-finder to convict Johnny under 21 U.S.C. Sec. 841(a)(1). Possession can be inferred from his phone conversations concerning the delivery and from Johnny's flight. See United States v. Chambers, 918 F.2d 1455, 1457 (9th Cir. 1990) (possession may be joint or constructive). Knowledge of the drugs can be inferred from Johnny's flight from Government agents. Id.; United States v. Christoffel, 952 F.2d 1086, 1089 (9th Cir. 1991), cert. denied, 112 S. Ct. 1700 (1992). Finally, intent to distribute can be inferred both from the quantity of drugs and from Johnny's conversation regarding the "loss." United States v. Innie, 7 F.3d 840, 844 (9th Cir. 1993) ("A jury may infer the intent to distribute a controlled substance from quantity alone."), cert. denied, 114 S. Ct. 1567 (1994).
 
 
 43
 Johnny Clark relies heavily on the discrepancy in the description of the bag -- the bag found was paper but the bag in the car was described as plastic. However, viewing this evidence in the light most favorable to the Government, the jury could easily have attributed this minor inconsistency to the limited time to observe because of the speedy departure of Maulupe. Furthermore, the fact that a co-conspirator's pager was found in the bag weighs against an inference that the cocaine had no connection to Johnny or Maulupe.
 
 
 44
 We hold that the evidence was sufficient to convict on Count Four.
 
 
 45
 IV. TWO-POINT REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY
 
 
 46
 Johnny Clark contends that the district court erred because it concluded that the Sentencing Guidelines do not permit a reduction for acceptance of responsibility after trial. This claim has merit.
 
 A.
 
 47
 A district court's interpretation of the Sentencing Guidelines is reviewed de novo. United States v. Mullins, 992 F.2d 1472, 1479 (9th Cir.), cert. denied, 113 S. Ct. 2997 (1993). The determination that a defendant has not accepted responsibility for his crime is reviewed for clear error and will not be disturbed unless it is "without foundation." United States v. Innie, 7 F.3d 840, 847-48 (9th Cir. 1993), cert. denied, 114 S. Ct. 1567 (1994); United States v. Barron-Rivera, 922 F.2d 549, 552 (9th Cir. 1991). Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility[, his or her determination] is entitled to great deference on review." U.S.S.G. Sec. 3E1.1 comment. n.5 (1992).
 
 
 48
 Under the Guidelines in effect at the time Johnny was sentenced,[1] a two-point reduction for acceptance of responsibility was warranted "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. Sec. 3E1.1(a) (1992). The commentary states:
 
 
 49
 This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each instance, however a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.
 
 
 50
 U.S.S.G. Sec. 3E1.1 comment. n.2 (1992).
 
 
 51
 However, "nothing in the guidelines requires a defendant to plead guilty in order to receive the reduction." United States v. McKinney, 15 F.3d 849, 852 (9th Cir. 1994) (citing United States v. Gonzalez, 897 F.2d 1018, 1020 (9th Cir. 1990)). "Indeed, were a defendant required to plead guilty to be entitled to the reduction, the sentencing guidelines would penalize the exercise of the constitutional right to go to trial." Id. (citing United States v. Johnson, 956 F.2d 894, 904 (9th Cir. 1992)). Consequently, Section 3E1.1 has been construed to permit a downward departure even where the defendant contests his factual guilt at trial as follows:
 
 
 52
 ... [I]n appropriate circumstances, the reduction is also available in cases in which the defendant manifests genuine contrition for his acts but nonetheless contests his factual guilt at trial.
 
 
 53
 * * *
 
 
 54
 * * *
 
 
 55
 ... In the ordinary case, a defendant who pleads not guilty and is convicted will have a difficult time convincing the court that his subsequent acceptance of responsibility for his actions is anything but a self-serving and insincere expression. Where the defendant statements make it clear that his contrition is sincere, however, he is entitled to the reduction even if he is convicted after trial.
 
 
 56
 McKinney, 15 F.3d at 853.
 
 B.
 
 57
 At sentencing, Johnny Clark asserted that he was entitled to a reduction for acceptance of responsibility and expressed his remorse through a letter to the court. Clark argues that his conduct evinced his acceptance of responsibility.[2]
 
 
 58
 The district court rejected Johnny's claim based solely on the grounds that he had gone to trial. During sentencing, the following colloquy took place between counsel for Johnny and the Court:
 
 
 59
 Mr. Granville: [I] want to bring to this Court's consideration the fact that Mr. Clark was assigned to probably not an average typical situation, I submit, and that is that he's involved in trial in concert with his wife and his wife's culpability, if any, in this case was not as clear as Mr. Clark's. I believe that factually she was much less culpable, that she had perhaps a much stronger reason to go to trial, and Mr. Clark felt he couldn't desert his wife. I'd ask the Court to take that into consideration.
 
 
 60
 Further, it is my understanding that Mr. Clark has submitted a letter in this case. He is remorseful. He regrets even more so the fact that he has involved his wife in this incident, and that has result in his children being denied of a mother. With that said, I'll submit it, your Honor.
 
 
 61
 I would ask the Court just to consider giving him a two-level decrease for the acceptance of responsibility.
 
 
 62
 The Court: No. I do not believe that under those facts, as you state them, that I would find that acceptance of responsibility. If it had been that the government would not accept one plea without the other, I might have some problem with that, with this husband and wife particularly, but if he was given the opportunity to plead and felt he could not allow his wife to go to trial alone or for whatever his personal reasons may be -- I'm not quarreling with his personal reasons. Perhaps he felt an allegiance to his wife -- but that really is not acceptance of responsibility. So I would not give a two-point or three-point deduction for that.
 
 
 63
 It's too bad. I mean there are a lot of sad things about this case. I mean here are two of them out operating this crack operation, one suckering the other one in. I'm not sure which one suckered the other one in, frankly.
 
 
 64
 Reporter's Transcript, Jan. 4, 1994, at 22-23.
 
 
 65
 Later, as it was denying Vaaiga's request for an acceptance of responsibility reduction, the court reasoned that the reduction was not warranted solely because the defendant had failed to plead guilty before trial as follows:
 
 
 66
 Mr. Ramsey: I believe the cases allow for -- the Guidelines do allow for acceptance even after trial.
 
 
 67
 Judge Byrne: Well, they do, but I mean in this case clearly they were guilty. They were guilty, and sure it's always a difficult situation because under the Guidelines' acceptance of responsibility it puts an enormous burden on defendant, to some stretch, to put the Government to their proof, and you have a right to put the government to their proof. That's one of the decisions that you have to make, but under the Guidelines, in my opinion, acceptance of responsibility means that you accept responsibility before trial. Otherwise, there wouldn't be any real acceptance of responsibility because after you are convicted, everybody would accept responsibility, most everybody.
 
 
 68
 Reporter's Transcript, Jan. 4, 1994, at 26.
 
 
 69
 Under this circuit's interpretation of section 3E1.1, going to trial to contest factual guilt does not automatically preclude a reduction for acceptance of responsibility. McKinney, 15 F.3d at 853. Yet, that appears to be precisely the basis for the district court's decision here. Consequently, we find that the district court misconstrued the applicable guidelines in denying Johnny the reduction and vacate the sentence and remand for resentencing under the applicable guidelines properly construed.
 
 
 70
 V. DISPUTED STATEMENTS IN PRESENTENCE REPORT
 
 
 71
 At the sentencing hearing, both defendants objected to a statement in the presentence report that Ina's Fashions had been set up by the Clarks to launder money from the drug operation.[3] However, the district court failed to make a finding on the issue or to make a determination that the matter would not be considered at sentencing.[4] The parties agree that the district court failed to comply with Federal Rule of Criminal Procedure 32(c)(3)(d).[5]
 
 
 72
 On this record, we are unable to determine whether the district court improperly relied on disputed information in the presentence report, or whether absent the erroneous factor it would have imposed the same sentence. See Williams v. United States, 503 U.S. 193, 202-05 (1992). Consequently, the sentences are vacated and the matter is remanded for resentencing.
 
 CONCLUSION
 
 73
 We affirm the defendants' convictions. We vacate the defendants' sentences, and we exercise our authority under 28 U.S.C. Sec. 3742(f) to remand for complete resentencing.[6]
 
 
 74
 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The Clarks were sentenced in January 1993, so we apply the Guidelines that were in effect as of November 1992
 
 
 [2]
 The Government made two plea bargain offers. Johnny rejected the first because it required Vaaiga to plead guilty as well. Johnny also rejected the second, which did not require Vaaiga's cooperation, because he did not want Vaaiga to go to trial alone
 
 
 [3]
 Although only Vaaiga argues this point, Johnny joins it. At the sentencing hearing both parties contested this statement
 
 
 [4]
 Instead, the district court asked both parties to "come to a stipulation to insert after that [statement] that the Clarks deny this allegation and contend that the business was not targeted for narcotic trafficking activities." The parties agreed to do so
 
 
 [5]
 Rule 32(c)(3)(D) provides as follows:
 If the comments of the defendant and the defendant's counsel or any testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.
 
 
 [6]
 28 U.S.C. Sec. 3742(f) states:
 If the court of appeals determines that the sentence -- (1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate.
 See also Williams, 503 U.S. at 202-05; United States v. Rodriguez-Razo, 962 F.2d 1418, 1423 (9th Cir. 1992) (violation of law always requires a remand).